**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

TERESA ROACH,

    *Plaintiff*,

*v.*                          CASE NO. 12-CV-12876

COMMISSIONER OF             DISTRICT JUDGE JOHN CORBETT O'MEARA
SOCIAL SECURITY,          MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

## I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.    REPORT

### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claims for a period of disability, Disability Insurance

---

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

Benefits ("DIB"), and Supplemental Security Income ("SSI") benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 11, 14.)

Plaintiff Teresa Roach was 45 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 7 at 26, 136, 143.) Plaintiff's employment history includes work as a child daycare provider in a junior high school for sixteen years, a general laborer/automobile assembler for a couple months, and a bell ringer for one month. (Tr. at 160.) Plaintiff filed the instant claims on February 2, 2010, alleging that she became unable to work on December 31, 2005. (Tr. at 136-42, 143-44.) The claims were denied at the initial administrative stages. (Tr. at 68-70.) In denying Plaintiff's claims, the Commissioner considered osteoarthritis, allied disorders, and affective disorders as possible bases for disability. (*Id.*) On December 14, 2010, and March 14, 2011, Plaintiff appeared before Administrative Law Judge ("ALJ") Gregory Holiday, who considered the application for benefits *de novo*. (Tr. at 8-25, 26-57, 58-67.) In a decision dated April 5, 2011, the ALJ found that Plaintiff was not disabled. (Tr. at 22.) Plaintiff requested a review of this decision on June 9, 2011. (Tr. at 7.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on April 27, 2012, when, after review of additional exhibits[2] (Tr. at 207-09, 377-87), the Appeals Council denied Plaintiff's request for review. (Tr. at 1-6.) On June 29, 2012, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

_____

[2]In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

2

### B.    Standard of Review

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the

3

ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability"). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247 (quoting SSR 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir.

1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

## C.   Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the DIB program of Title II, 42 U.S.C. §§ 401 *et seq.*, and the SSI program of Title XVI, 42 U.S.C. §§ 1381 *et seq.* Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.    ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements through September 30, 2009, and that Plaintiff had not engaged in substantial gainful activity since December 31, 2005, the alleged amended onset date. (Tr. at 13-14.) At step two, the ALJ found that Plaintiff's arthritis (neck and back), plantar fasciitis, degenerative joint disease and obesity were "severe" within the meaning of the second sequential step. (Tr. at 14-15.) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 15.) At step four, the ALJ found that Plaintiff could perform her past relevant work as an automobile assembler and a childcare worker. (Tr. at 21-22.) Alternatively, at step five, the ALJ found that Plaintiff could perform a limited range of medium work. (Tr. at 16-21.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 22.)

### E.   Administrative Record

A review of the relevant medical evidence contained in the administrative record indicates that on September 13, 2005, x-rays of Plaintiff's knees were normal. (Tr. at 249.) On October 7, 2005, an MRI of the right knee revealed "[s]ynovial effusion[,]" "[c]omplex tear posterior born of the medial meniscus." (Tr. at 253.)

Plaintiff was treated by Dr. Michael Roberts from November 2005 through November 2006 for knee pain. (Tr. at 210-18, 228-55.) On November 3, 2005, Dr. Roberts noted that Plaintiff "ambulates without assistance" and that an "[x]-ray of the right knee shows no acute osseous injury." On January 19, 2006, Dr. Roberts noted that an MRI showed a "meniscus tear" and that "conservative treatment" would be tried, including physical therapy and prescription medication. (Tr. at 213.) Upon Plaintiff's request, Dr. Roberts indicated that he would perform arthroscopic surgery on Plaintiff's right knee in June 2006. (Tr. at 214.)

7

At the request of Disability Determination Services ("DDS"), Plaintiff was examined on June 17, 2006, by Dr. R. Matta. (Tr. at 219-27.) Dr. Matta noted that Plaintiff had "[n]o history of seizures or strokes" and that the "patient walked into the examination room without support." (Tr. at 220.) Dr. Matta also noted that Plaintiff's "[g]ait is normal" and that she "is able to walk on heels, tiptoes and tandem walk." (*Id.*) Plaintiff was noted to be "alert and oriented times three[,]" her "[p]lantars are flexor[,]" her "[p]ower is 5/5 overall" and her "[h]andgrip is 90 pounds on the right and 80 pounds on the left." (*Id.*)

On December 6, 2007, Plaintiff was referred to James Selwa, M.D., who performed a neurological examination on Plaintiff, the results of which were normal. (Tr. at 356-57.) Dr. Selwa noted that Plaintiff "describes 'episodes' where she 'blacks out' though she can hear others during some of this time." (Tr. at 357.) However, Dr. Selwa opined that "[a]fter a detailed history and a normal neurological exam, this seems atypical for a seizure disorder . . . . We strongly think that this could be related to her anxiety." (*Id.*)

Plaintiff was also treated by Dr. Harvey Ziegler from February to November 2010. (Tr. at 300-14.) On February 1, 2010, an echocardiogram was normal. (Tr. at 258.) On February 1, 2010,[3] an examination of Plaintiff's cervical spine showed "spurring of C3, C4, C5 and C6." (Tr. at 300, 341.)

Plaintiff was also examined at the request of DDS by Dr. Jai K. Prasad, on June 25, 2010. (Tr. at 260-66.) Dr. Prasad noted that Plaintiff's "gait is normal" and that she could "heel-toe walk, get on and off the examination table with no evidence of stumbling or lurching and no evidence of joint instability." (Tr. at 262.) Plaintiff had "no sensory or motor deficit in the upper extremities" and her "pinch and grip strength are within normal limits." (*Id.*) Dr. Prasad noted that

---

[3]The date on the document is "2/1/2020" but this appears to be a typographical error.

8

although Plaintiff "does complain of hypertension," "there is no evidence of hypertensive heart disease" and "no shortness of breath and no chest pain." (*Id.*) Dr. Prasad stated that Plaintiff "needs a psychiatric consult for her mental depression but otherwise can do physical work because she has normal range of movement and no sensory or motor deficit in the upper extremities and normal range of movement and no sensory or motor deficit in the lower extremities, and her gait is normal." (Tr. at 263.)

Plaintiff underwent a psychiatric/psychological evaluation with Drs. John J. Jeter and Hugh Bray on June 25, 2010. (Tr. at 267-71.) The evaluation stated that "the claimant is able to understand, retain and follow simple instructions and generally restricted to performing simple, routine, repetitive and concrete tasks" and that her "depression and anxiety manifests on anniversaries associated with her mother's death date, holidays and special days." (Tr. at 269.) Plaintiff was diagnosed with depression and anxiety "by history" and assessed a GAF score of 68-72. (Tr. at 269-70.)

On August 25, 2010, x-rays of Plaintiff's right knee showed "[m]ild osteoarthritis involving the medial compartment of the knee joint, unchanged since prior study" of "July 30, 2007." (Tr. at 333.) On the same date, x-rays of Plaintiff's left foot and right foot, based on reported pain, were "negative[.]" (Tr. at 334-35.)

Plaintiff was treated at Park Medical Center from April 2008 through December 2010. (Tr. at 315-76.) On December 1, 2010, Plaintiff was examined and she was found to be physically normal, alert and oriented, no motor or sensory deficits, and no unusual anxiety or evidence of depression. (Tr. at 322.) On October 26, 2010, Plaintiff's examination also revealed that Plaintiff had a full range of motion in all joints except that her right knee "includes flexion to 60" and her left knee "includes flexion to 95." (Tr. at 326.)

A Psychiatric Review Technique was completed by Dr. James Tripp on July 13, 2010. (Tr. at 272-85.) A previous review concluded there was insufficient evidence. (Tr. at 286-99.) Dr. Tripp concluded that the mental impairments, of "depression by history" and "anxiety by history" were non-severe. (Tr. at 272, 275, 277.) Dr. Tripp concluded that Plaintiff was mildly limited in activities of daily living, and in maintaining concentration, persistence or pace but had no difficulties in maintaining social functioning. (Tr. at 282.)

A Physical Residual Functional Capacity ("RFC") Assessment completed on July 10, 2010, by Julianne Powers, a single decision maker ("SDM"), concluded that Plaintiff could occasionally lift 50 pounds, frequently lift 25 pounds, stand or walk for about 6 hours in an 8-hour workday, sit for less than 6 hours in an 8-hour workday, and was unlimited in her ability to push or pull. (Tr. at 72.) The assessment also concluded that Plaintiff would be frequently limited in her ability to balance and stoop and would otherwise be occasionally limited in all other postural areas. (Tr. at 73.) There were no manipulative, visual, communicative, or environmental limitations established. (Tr. at 75.) As to credibility, the assessment concluded

> Clmt may have pain in neck, back and knees, but currently has nml [normal] gait with some limited ROM's [range of motion] in neck and back. Allegations are partially supported by MER [medical evidence of record] in file; Clmt has MDI [medically determinable impairments] which could result in alleged restrictions, but intensity of symptoms and their impact on functioning are not fully consistent with totality of evidence. Clmt has some limitations in range of motions and neck, knee and back pain, and should be able to do work that does not require lifting items weighing over 50#, with noted limitations.

(Tr. at 76.) The RFC Assessment noted that there was a medical source statement in the file and that the assessment's conclusions about Plaintiff's limitations and restrictions are not significantly different from the assessment's findings. (Tr. at 77.)

Plaintiff indicated in her daily activity report that she is able to "provide all that is require[d] of what a mother [should] do, cook, drop off in [sic] pickup from school." (Tr. at 175.) Plaintiff

10

stated that she does not need any reminders to take care of her personal needs or to take medication, that she is able to prepare "complete meals" "daily" which takes "[a]bout 3 hours[.]" (Tr. at 176.)  Plaintiff also indicated that she does dishes and cleaning for "[a]bout 1 hr daily" and laundry for "3 hr weekly." (*Id.*) Plaintiff stated that she goes outside on a "daily" basis, and travels by walking, driving and riding in a car. (Tr. at 177.) Plaintiff added that she shops in stores "once a month, [for] about 4 hours." (*Id.*)

At the administrative hearing, it was noted that the first hearing was terminated to allow Plaintiff to obtain an attorney and that at this hearing, she was represented by counsel. (Tr. at 28.) When asked by the ALJ if anything special happened on the alleged onset date of December 31, 2005, Plaintiff responded that when she woke up, she "couldn't stand up" and "couldn't bend [her] leg" and "started walking with this limp." (Tr. at 30-31.) Plaintiff indicated that her doctor "said something about the cartilage that I had worn over the years. It was a wear and tear - - over the years." (Tr. at 31.) Plaintiff testified that she has arthritis in her neck and back and that her feet swell if she sits for a long period of time without putting her feet up. (Tr. at 33-34.) Plaintiff also stated that she is able to stand for "about 15 minutes" and that she "ha[s] to lean on something - - on a wall or something." (Tr. at 34.) She added that after 15 minutes of standing, she has to sit down but can only sit for "about 30 minutes at the most" and then she "ha[s] to get up and walk around" "because of the swelling." (Tr. at 35.) Plaintiff also stated that she can only walk for one block before needing "a good 25 minutes" to rest. (*Id.*) Plaintiff stated that she can carry two plastic grocery bags at a time and can carry a gallon of milk in each hand for a short period of time. (Tr. at 36.) Plaintiff testified that she does not have any difficulty picking up coins or buttoning clothes. (Tr. at 38.)

Plaintiff indicated that she forgets things sometimes and that this began "right after my mother passed away [in 2006], I forgot about a lot of stuff." (Tr. at 39, 42.) Plaintiff stated that she loves to read, especially Christian books. (Tr. at 40.) Plaintiff testified that she is good at following written instructions but is not good at following oral instructions. (Tr. at 41.) Plaintiff testified that she takes care of the house and alternates cooking with her 16 year old son. (Tr. at 48.) Plaintiff also stated that she takes her son to school and back, and loves to play the card game Uno. (Tr. at 49-50.) Plaintiff also testified that she uses a cell phone and that her son is teaching her to text message. (Tr. at 50.) Plaintiff is also able to do the laundry, even though the laundry room is in the basement of her house. (Tr. at 51.) Plaintiff also stated that she has to "take one step at time" and hold the railing when using the steps. (Tr. at 52.)

At some point in the hearing, the ALJ noted that Plaintiff was visibly "shaken, upset," so he indicated they would take a break from the hearing. (Tr. at 37.) Later in the hearing, Plaintiff indicated that she did not feel stressed anymore but that earlier in the hearing she felt "[j]ust, like - - overwhelmed." (Tr. at 44.) Plaintiff also asked to stand up during the hearing. (Tr. at 45.)

At the administrative hearing, the ALJ asked the Vocational Expert ("VE") to consider an individual with Plaintiff's background who

> can only occasionally climb ladders - - occasional, up to one-third of a normal work day; cannot climb ropes or scaffolds; cannot, more than occasionally, climb ramps or stairs; same with crouching, kneeling, or crawling.

(Tr. at 54.) The VE responded that such a person could perform Plaintiff's past work as a car assembler and child care worker. (*Id.*) The ALJ then asked the VE to assume

> the person can perform at not more than the light exertional level, with the same restrictions as in hypothetical one, plus some additional restrictions - - no climbing of ladders either, so no ladders, ropes or scaffolds; not more than occasional overhead reaching.

This person must be employed in a low-stress job, defiend as having not more than occasional decision making and not more than occasional changes in the work setting.

The person must be reminded of tasks up to eight times per work day. The person also needs close supervision, defined as having a supervisor check work up to eight times per work day.

(Tr. at 54-55.) The VE responded that such a person could not perform any past relevant work or any work at all. (Tr. at 55.) When asked by the ALJ what precludes employment, the VE responded that the "reminding of tasks and close supervision." (*Id.*) The ALJ then asked the VE to consider another hypothetical

assume the same restrictions as in hypothetical two, with the following changes. Instead of occasional climbing of ramps or stairs, not more than brief climbing of ramps or stairs; brief meaning up to 10 percent of the work day; the same with crouching, kneeling, or crawling.

And, the person would work in a job that - - where they have to be reminded of tasks up to four times per work day, instead of eight; and, under close supervision, this time defined as having a supervisor check that person's work up to four times per day.

(Tr. at 55-56.) The VE responded that competitive employment would still be eliminated. (Tr. at 56.)

**F.      Analysis and Conclusions**

**1.      Legal Standards**

The ALJ determined that during the time Plaintiff qualified for benefits, she possessed the residual functional capacity to return to her past relevant work as an automobile assembler and a child care worker. (Tr. at 21-22.)

The Commissioner's regulations state that the agency "will first compare our assessment of your residual functional capacity with the physical and mental demands of your past relevant work." 20 C.F.R. § 416.960(b); 20 C.F.R. §404.1560(b). "If you can still do this kind of work, we will find that you are not disabled." 20 C.F.R. § 404.1520(f); 20 C.F.R. § 404.1560(b)(3). "'By

referring to the claimant's ability to perform a "kind" of work, [the regulations] concentrate[] on the claimant's capacity to perform a type of activity rather than his ability to return to a specific job or to find one exactly like it.'" *Boucher v. Apfel*, No. 99-1906, 2000 WL 1769520, at *7 (6th Cir. Nov. 15, 2000) (quoting *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995)).

An "ALJ [is] not required to solicit testimony from a VE in reaching his conclusion" that a plaintiff is able to perform her past relevant work. *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010) (citing 20 C.F.R. § 404.1560(b)(2) ("We *may* use the service of vocational experts . . . to help us determine whether you can do your past relevant work[.]") (emphasis in original); *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) ("The regulations permit an ALJ to use the services of a vocational expert at step four to determine whether a claimant can do his past relevant work . . . .")). Should the ALJ use the services of a VE, the ALJ need only incorporate those limitations into the hypothetical question that he finds credible and supported by the record. *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

Alternatively, at step five, the ALJ found that Plaintiff could perform a limited range of medium work. (Tr. at 16-21.) "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. 404.1567(c).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

### 2.     Substantial Evidence

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 11.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Specifically, Plaintiff contends that "the ALJ erred in holding that the Plaintiff could return to her past relevant work and has the residual functional capacity to perform medium skilled work" (Doc. 11 at 5-8) and that the "ALJ erred in his assessment of Plaintiff's credibility and non-compliance with treatment" "as it relates to her hypertension and that the claimant did not seek more than conservative treatment." (*Id.* at 8-9.) Plaintiff relies on "treatment records from Eastwood Clinic, obtained after the hearing and submitted to the Appeals Council, [that] confirm the severity of the claimant's mental condition." (Doc. 11 at 7.)

### a.    Credibility Analysis

When a disability determination that would be fully favorable to a claimant cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health and Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, No. 09-5773, 2011 WL 180789 at *4 (6th Cir. Jan. 19, 2011) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). When

weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility"); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645 at *3 (6th Cir. Feb. 11, 1999) (unpublished). However, "[i]f an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky,* 35 F.3d at 1036.

The social security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p. In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *See id.*; *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky*, 35 F.3d at 1038-39; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms. Secondly, after an underlying physical or mental impairment is found to exist that could reasonably be expected to produce the claimant's pain or symptoms, the ALJ then determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. *Id.* Although a claimant's description of his physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," C.F.R. §§ 404.1528(a), 416.929(a), "[a]n individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded *solely*

16

because they are not substantiated by objective medical evidence." SSR 96-7p, at *1 (emphasis added). Instead, the ALJ must consider the following factors:

(i)      [D]aily activities;

(ii)     The location, duration, frequency, and intensity of . . . pain;

(iii)    Precipitating and aggravating factors;

(iv)     The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;

(v)      Treatment, other than medication, . . . received for relief of . . . pain;

(vi)     Any measures . . . used to relieve . . . pain.

*Felisky*, 35 F.3d at 1039-40; SSR 96-7p, at *3. Furthermore, the consistency of the evidence, including a claimant's subjective statements, is relevant in determining a claimant's credibility. 20 C.F.R. § 404.1527(c); SSR 96-7p, at *5.

In the instant case, the ALJ thoroughly considered each of the above factors. (Tr. at 16-21.) Plaintiff argues that the "ALJ erred in his assessment of Plaintiff's credibility and non-compliance with treatment" "as it relates to her hypertension and that the claimant did not seek more than conservative treatment." (Doc. 11 at 8-9.) I first suggest that the ALJ's discussion of Plaintiff's non-compliance as to blood pressure is not significant to the ALJ's findings. As noted by the ALJ, evidence of non-compliance can only undermine a finding of disability with respect to the impairment the claimant could have better controlled with compliance and in this case, hypertension was not considered a severe impairment. (Tr. at 20.) In addition, I suggest that the ALJ's reference to conservative treatment was not related to anything that Plaintiff failed to "seek" but instead was mentioned to support his findings that Plaintiff's impairments were not disabling. (Tr. at 21.) In other words, the ALJ was merely paraphrasing precedent holding that modest or

17

conservative treatment is inconsistent with a finding of disabling symptoms. *See Myatt v. Comm'r of Soc. Sec.*, 251 F. App'x 332, 334-35 (6th Cir. 2007).

Plaintiff relies heavily on "treatment records from Eastwood Clinic, obtained after the hearing and submitted to the Appeals Council, [that] confirm the severity of the claimant's mental condition." (Doc. 11 at 7.) However, as noted above, "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993).

I suggest that the ALJ's finding – that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not credible to the extent they were inconsistent with the RFC analysis – is supported by substantial evidence. (Tr. at 17.) As to physical impairments, although Plaintiff had a meniscal tear in her right knee and eventually some evidence of osteoarthritis in her neck, after arthroscopic surgery, examiners noted that Plaintiff "walked into the examination room without support," that her "[g]ait is normal[,]" she "is able to walk on heels, tiptoes and tandem walk" and that her "[p]ower is 5/5 overall[.]" (Tr. at 220.) On June 25, 2010, Dr. Prasad noted that Plaintiff's "gait is normal" and that she could "heel-toe walk, get on and off the examination table with no evidence of stumbling or lurching and no evidence of joint instability." (Tr. at 262.) Plaintiff had "no sensory or motor deficit in the upper extremities" and her "pinch and grip strength [were] within normal limits." (*Id.*) Plaintiff's osteoarthritis was considered "mild" and was unchanged from 2007 to 2010. (Tr. at 333.) On October 26, 2010, Plaintiff's examination also revealed that Plaintiff had a full range of motion in all joints except that her right knee "includes flexion to 60" and her left knee "includes flexion to 95." (Tr. at 326.)

Dr. Matta noted that Plaintiff had "[n]o history of seizures or strokes." (Tr. at 220.) In addition, Dr. Selwa opined that "[a]fter a detailed history and a normal neurological exam, this seems atypical for a seizure disorder." (Tr. at 357.)

The RFC Assessment also concluded that Plaintiff was only partially credible:

> Clmt may have pain in neck, back and knees, but currently has nml [normal] gait with some limited ROM's [range of motion] in neck and back. Allegations are partially supported by MER [medical evidence of record] in file; Clmt has MDI [medically determinable impairments] which could result in alleged restrictions, but intensity of symptoms and their impact on functioning are not fully consistent with totality of evidence. Clmt has some limitations in range of motions and neck, knee and back pain, and should be able to do work that does not require lifting items weighing over 50#, with noted limitations.

(Tr. at 76.)

As to mental impairments, Plaintiff never received any mental health treatment. Plaintiff's psychiatric/psychological evaluation showed that she "is able to understand, retain and follow simple instructions and generally restricted to performing simple, routine, repetitive and concrete tasks" and that her "depression and anxiety manifests on anniversaries associated with her mother's death date, holidays and special days." (Tr. at 269.) On December 1, 2010, Plaintiff was examined and she was found to be alert and oriented, no motor or sensory deficits, and no unusual anxiety or evidence of depression. (Tr. at 322.) Dr. Tripp concluded that the mental impairments, of "depression by history" and "anxiety by history" were non-severe. (Tr. at 272, 275, 277.) Dr. Tripp also concluded that Plaintiff was only mildly limited in activities of daily living, and in maintaining concentration, persistence or pace but had no difficulties in maintaining social functioning. (Tr. at 282.)

I therefore suggest the ALJ's credibility findings are supported by the medical evidence of record and are consistent with all medical opinion evidence.

**b.     Past Relevant Work and RFC Analysis**

I suggest that the ALJ's RFC analysis is also supported by substantial evidence for the same reasons as listed under the credibility analysis. In addition, I suggest that the hypothetical posed to the VE properly incorporated the limitations found in the RFC assessment and was in harmony with the objective record medical evidence and Plaintiff's own statements that she is able to "provide all that is require of what a mother do, cook, drop off in [sic] pickup from school[,]" that she does not need any reminders to take care of her personal needs or to take medication, that she is able to prepare "complete meals" "daily" which takes "[a]bout 3 hours[,]" that she does dishes and cleaning for "[a]bout 1 hr daily" and laundry for "3 hr weekly[,]" in her basement, uses a cell phone, enjoys reading, goes outside on a "daily" basis, and travels by walking, driving and riding in a car, that she shops in stores "once a month, [for] about 4 hours." (Tr. at 49-51, 175-77.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

Therefore, I suggest that the ALJ's conclusion that Plaintiff could perform her past relevant work as an automobile assembler or child care worker or that Plaintiff could perform a limited range of medium work is supported by substantial evidence.

### 3.    Conclusion

For all these reasons, after review of the record, I suggest that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

### III.    REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

s/ Charles E Binder
CHARLES E. BINDER
United States Magistrate Judge

Dated: May 30, 2013

### CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date: May 30, 2013                    By     s/Patricia T. Morris
                                            Law Clerk to Magistrate Judge Binder